22475. HOPE, administrator, *v.* BIGGERS.

DECIDED NOVEMBER 19, 1932.

*Paul S. Etheridge & Sons, Morgan Belser,* for plaintiff in error. *Clarke & Clarke, C. W. Buchanan,* contra.

PER CURIAM. W. R. Biggers brought an action against George M. Hope Jr., as administrator of the estate of George M. Hope, deceased, upon a certain written contract alleged to have been entered into by the plaintiff and George M. Hope on January 5, 1922. The sum sued for was $16,431.60. The verdict was for the principal sum of $3,215, plus interest amounting to $2,137.97. The defendant excepts to the judgment overruling his motion for a new trial.

There being no demurrer in the record, we deem it unnecessary to set out the petition here. In addition to denying the material allegations of the petition, the answer averred that the defendant was not indebted to the plaintiff in any sum, and that if George M. Hope had been indebted to plaintiff at any time, said indebtedness had been fully discharged and paid off.

For the purposes of this decision, it is only necessary to quote the following parts of the contract declared upon: "It is agreed that W. R. Biggers having this day submitted figures and information that is satisfactory, he is employed to prepare plans and specifications and to supervise to completion the proposed building, which is not to exceed $75,000. . . For said services, plans, specifications, supervision and engineering service he is to receive or be paid from time to time a fee of six per cent., based upon the

completed project. . . It is further agreed that, should the tenant contemplated by Biggers (International Harvester Company of America) be secured at a rental of $10,000, or more, per year, on a lease of ten years or more, he is to receive a commission of five per cent., based upon the gross cash rental secured under said lease, for securing said tenant through a local representative, said commission to be paid by George M. Hope on occupancy of building by tenant. . ."

In regard to the general grounds of the motion for a new trial, we will state generally that the execution of the contract declared upon was proved; that there was evidence that the plaintiff fully performed his services as supervising architect; that the lease for the completed building with the International Harvester Company was consummated, though the evidence is conflicting as to whether the plaintiff procured the lease; and that the alleged settlement of said contract, or any payment thereunder, does not satisfactorily appear from the record. We hold that the evidence supports the verdict, and that there is no merit in the general grounds.

It is averred in the special ground of the motion for a new trial that the contract declared upon "was not in fact executed and signed by George M. Hope, but that the purported signature thereon was a forgery." The witness who was to prove the foregoing averment is W. C. Lowe, a handwriting expert. In his affidavit attached to the ground, Lowe deposes that he had compared said contract with certain other documents containing proved signatures of Hope, and that after subjecting the signatures to "all tests generally used in determining the genuineness of handwriting," he reached the opinion that the signature of Hope to said contract was a forgery. In his affidavit of several pages, Lowe points out in much detail the reasons for his said conclusion.

In his affidavit attached to the motion for a new trial, George M. Hope Jr. deposes that "the first time affiant ever saw the alleged contract . . was when the same was tendered in evidence in said case by plaintiff; that immediately thereafter; and while said case was in progress, he and his counsel inspected said document, and forthwith endeavored to procure a handwriting expert to determine the genuineness of the signature of George M. Hope affixed thereto; that there was at said time, and is now, only one such expert in the City of Atlanta or within the State of Georgia, as far

as affiant could learn; that affiant and his counsel endeavored to procure such handwriting expert to testify in said case, but said expert stated that it would require a week or ten days to make an examination of said document; that affiant and counsel immediately employed said expert witness . . , and also began a thorough search of the files of George M. Hope, deceased, for the purpose of discovering other signatures known to be genuine, so that the same could be used by said expert witness in his examination . . ; and that said search and the examination of said expert witness consumed so much time that in the meantime the verdict had been rendered in said case."

C. H. Glass testified in part as follows: "I knew George M. Hope during his lifetime. I knew him on January 5, 1922. This paper you exhibit to me was read over by Mr. Biggers and Mr. Hope in my presence; and it was signed by Mr. Biggers and Mr. Hope. . . I witnessed it. I saw Mr. Hope sign it. I know Mr. Hope's signature from several checks which he wrote. . . After the contract was signed, I saw the . . building as it was erected over there on Whitehall street and Southern Railway. . . From the beginning to the end Mr. Biggers was supervising it. . . The contract that I witnessed was made in duplicate—two copies, and I signed them both. . . I remember Captain Hope says: 'It isn't necessary to have another witness. You are the only witness necessary; go and sign it.'" C. H. Skipper testified: "I was in the room when it was signed. I didn't see it signed. . . I heard them reading it off, and saw it after it was signed. This is the paper that I saw. I know that's the one . . because I wrote it." W. R. Powell swore: "I heard the contract read over there in the office the day it was signed. . . I don't remember who read it." G. H. Butler testified: "I knew Mr. George M. Hope in 1922. . . I built the International Building . . on Whitehall street and Southern Railroad. Mr. Biggers did the engineering and the supervising. . . Mr. Biggers was there on the job continuously. . . It was completed around the first of June, 1922. Mr. Biggers was there when it was completed." Dr. S. T. Biggers testified: "I am a brother of W. R. Biggers. I knew Capt. George M. Hope. I saw Mr. Hope and Mr. Biggers sign that paper. . . I know Capt. Hope's signature. . ." C. H. Glass, recalled by plaintiff, testified: "I know of my own knowledge that

Biggers got a tenant for that building—the International Harvester Company. . . I have heard Capt. Hope say that in my presence. . ."

After testifying that he procured the lease on the building in question "without any help from anybody in the world," W. H. Wilson swore: "I met Mr. Biggers in Captain Hope's office. Captain Hope . . says: 'I want you to meet Willis Biggers. You are going to have some business with each other. . . Willis is going to be consulting architect on this. I have known him quite a while, and I hope you all get along together. . . If you have any difficulty about anything being done, jump on Biggers; don't come to me. He's the man to play ball with until you get the building completed and the lease signed.'"

After reading the testimony of George Hope Jr. several times, we must own that we can not tell from it with certainty whether he did or did not swear that his father signed the contract. However, he did testify positively that several signatures presented to him were those of his father, and just as positively that others were not. The witness testified positively that the lease of the building to the International Harvester Company was signed by his father.

Much documentary evidence was presented to the jury, but we shall mention here only the contract declared upon, the lease contract between George M. Hope and the International Harvester Company, and numerous documents with proved signatures of George M. Hope thereon.

We have gone at some length into the evidence in the case because the ground under consideration goes to the very vitals of the action. We take it that the following statement taken from head-note 4 of the decision in *Young* v. *State*, 56 *Ga*. 403, is as much the law of Georgia to-day as it was when Justice Bleckley delivered that decision in 1875: "Newly discovered evidence is not favored as a ground for a new trial. . . Courts are not obliged to grant a new trial for newly discovered evidence unless reasonably convinced that on another trial there would probably be a different verdict." This rule has been applied in *Gregory* v. *Harrell*, 88 *Ga*. 170 (14 S. E. 186); *Paden* v. *State*, 17 *Ga. App*. 112 (86 S. E. 287), and in countless other cases decided by the appellate courts of this State.

It may be that the trial judge laid considerable stress upon the

fact that the evidence was impeaching in its nature, or that it was cumulative. It may be that since there was testimony that the contract was executed in duplicate, and since the contract was introduced by the plaintiff at the trial of the case, the court was of the opinion that due diligence had not been exercised in producing the evidence at the trial. But we prefer not to decide the case upon any of these theories, but to determine the issue presented in the light of the rule just stated. The direct evidence is overwhelming that George M. Hope did sign the contract in question, and the circumstances strongly support the direct evidence. For instance, witnesses who did not see the signing heard the contract read over at the time it was alleged to have been signed; W. R. Biggers did prepare the plans and specifications for the building, and did supervise its construction; the building was completed and leased to the very party mentioned in the contract; and W. H. Wilson, sworn for the defendant, testified that Captain Hope introduced him to Biggers as his consulting architect. Furthermore, George M. Hope Jr., the defendant in the trial court, who appeared to be thoroughly familiar with his father's signature, was on the stand in his own behalf, and the jury trying the case had out with it several documents containing proved signatures of George M. Hope with which to compare the alleged forged signature. In *Paden* v. *State,* supra, this language appears: "Although newly discovered evidence may be somewhat cumulative of testimony previously introduced, and impeaching in its character, the real ultimate criterion by which the merit of such testimony should be measured is the probability of a different result." To our minds, it is highly improbable that the alleged newly discovered evidence in the case at bar would produce a different result upon another trial of the case; and for this reason we hold that the ground is not meritorious.

*Judgment affirmed. Broyles, C. J., and Hooper, J., concur. MacIntyre, J., not presiding.*